UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **DIAMOND HEYWARD,** | ) |
| Plaintiff, | ) |
| v. | ) CASE NO.: 2:24-cv-686-BHH |
| **GROUPE SEB USA, INC.; and NEWELL BRANDS, INC.,** | ) JURY TRIAL DEMANDED |
| Defendants. | ) |

Plaintiff, **DIAMOND HEYWARD**, (hereafter referred to as "Plaintiff"), by and through her undersigned counsel, **JOHNSON BECKER, PLLC** and **ROGERS, PATRICK, WESTBROOK & BRICKMAN, LLC**, hereby submits the following Complaint and Demand for Jury Trial against Defendants, **GROUPE SEB USA, INC.** and **NEWELL BRANDS, INC.** (hereafter collectively referred to as "Defendants"), and alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1.  Defendants design, manufacture, market, import, distribute and sell consumer kitchen products, including the subject "Mirro Pressure Cooker," which specifically includes the Model Number M-0536 (referred to hereafter as "pressure cooker(s)") that is at issue in this case. The pressure cooker at issue in this case was made in approximately 1981.

2.  Upon information and belief, at the time of the 1981 manufacture of the stovetop pressure cooker, the Mirro brand name was still owned by the Mirro Aluminum Company.

1

3. Upon information and belief, in 1983, the Mirro Aluminum Company was acquired by Defendant Newell Brands, Inc. (then named Newell Rubbermaid).

4. Upon information and belief, Defendant Group SEB USA purchased the Mirro Wear-Ever brand name in 2006 from Global Home Products, and continues to own the Wear-Ever brand name, and substantially participated in the distribution and sale of the subject pressure cooker.

5. Throughout the course of the subject pressure cooker's production and ownership, the Defendants have touted the "safety" of their pressure cookers, and stated that they cannot be opened while in use. Despite Defendants' claims of "safety," they designed, manufactured, marketed, imported, distributed and sold a product that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to consumers.

6. Specifically, said defects manifest themselves when, despite Defendants' statements, the lid of the pressure cooker is removable with built-up pressure, heat, and steam still inside the unit. When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families, and other bystanders. The Plaintiff in this case sustained serious and substantial bodily injuries and damages when the lid of the pressure cooker was able to be rotated, opened, or removed while the pressure cooker retained pressure.

7. Defendants knew or should have known of these defects, but have nevertheless put profit ahead of safety by continuing to sell their pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like her.

8.      As a direct and proximate result of Defendants' collective conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF DIAMOND HEYWARD

9.      Plaintiff is a resident and citizen of the City of Charleston, County of Charleston, State of South Carolina.

10.     On or about February 15, 2021, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid being able to be rotated and opened while the pressure cooker was still under pressure, during the normal, directed use of the pressure cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff.  The incident occurred as a result of the failure of the pressure cooker's supposed safety mechanisms which purport to keep the consumer safe while using the pressure cooker.  In addition, the incident occurred as a result of Defendants' collective failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

## THE DEFENDANTS

11.     Defendants design, manufacture, market, import, distribute and sell a variety of consumer kitchen products including pressure cookers, juicers, coffee makers, and air-fryers, amongst others.

12.     Defendant Groupe SEB USA, Inc. (hereinafter, "Groupe SEB" or "Defendant Groupe SEB"), is a Delaware Corporation, with a principal business located at 5 Woodhollow Road, Fl. 2, Parsippany, New Jersey 07054-2834, and does business in all 50 states. At all times relevant, Groupe SEB substantially participated in the distribution and sale of the Mirro Brand pressure cookers, which caused Plaintiff's injuries and damages.

13. Defendant Newell Brands, Inc. (hereinafter, "Newell Brands" or "Defendant Newell Brands") is a Delaware corporation, with a principal place of business located at 6655 Peachtree Dunwoody Road, Atlanta, Georgia 30328. Upon information and belief, and at all times relevant, Defendant Newell Brands substantially participated in the distribution and sale of the subject pressure cooker, which caused Plaintiff's injuries and damages.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

16. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants have sufficient minimum contacts with the State of South Carolina and intentionally availed themselves of the markets within South Carolina through the promotion, sale, marketing, and distribution of their products.

## FACTUAL BACKGROUND

17. Defendants are engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling the pressure cookers at issue in this litigation.

18. Upon information and belief, at the time of the 1981 manufacture of the stovetop pressure cooker, the Mirro brand name was still owned by the Mirro Aluminum Company.

19. Upon information and belief, in 1983, the Mirro Aluminum Company was acquired by Defendant Newell Brands, Inc. (then named Newell Rubbermaid).

20. Upon information and belief, Defendant Group SEB USA purchased the Mirro Wear-Ever

4

brand name in 2006 from Global Home Products, and continues to own the Wear-Ever brand name, and substantially participated in the distribution and sale of the subject pressure cooker.

21. Plaintiff and/or her family purchased the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

22. Plaintiff used her pressure cooker for its intended purpose of preparing meals for herself and/or family and did so in a manner that was reasonable and foreseeable by the Defendants.

23. However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by the Defendants in that it failed to properly function as to prevent the lid from being rotated, opened, or removed with normal force while the unit remained pressurized, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff, her family, and similar consumers in danger while using the pressure cookers.

24. Defendants' pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

25. Economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized.

26. As a direct and proximate result of Defendants' collective failure to warn consumers of such defects, their negligent misrepresentations, their failure to remove a product with such defects from the stream of commerce, and their negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries to Plaintiff.

27.     Consequently, the Plaintiff in this case seeks compensatory damages resulting from the use of Defendants' pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY

28.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

29.     At all times relevant, there was in full force and effect certain statutes of the State of South Caroline pertaining to Sellers of Defective Products as set forth in Section 15-73-10 et seq. of the South Carolina Code Ann. (1976, as amended).

30.     Pursuant to S.C. Code § 15-73-10 et seq., Defendants are strictly liable in tort, irrespective of privity, for designing, manufacturing, warranting, marketing, importing, distributing, selling, and otherwise placing a defective and unreasonably dangerous product into the stream of commerce, which was the proximate cause of Plaintiff's injuries and damages.

31.     At all times relevant herein, Defendants were in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling the pressure cookers to consumers, including the Subject Pressure Cooker.

32.     At the time they were designed, manufactured, warranted, marketed, imported, distributed, and sold by Defendants, the pressure cookers were defective in their design, manufacture and/or warnings and were unreasonably dangerous for their foreseeable uses.

33.     The Subject Pressure Cooker was expected to and did reach Plaintiff without undergoing any substantial changes or alterations in its condition.

34. Plaintiff neither misused nor materially altered the Subject Pressure Cooker and, at the time of the incident complained of herein, the Subject Pressure Cooker was in the same or substantially similar condition as it was in at the time of sale.

35. At all relevant times, including when the incident alleged herein occurred, the Subject Pressure Cooker was used by Plaintiff in an intended and/or foreseeable manner.

36. As designed, manufactured, warranted, marketed, imported, distributed, and sold, the pressure cookers at issue were unreasonably dangerous and failed to perform in a manner reasonably expected in light of their intended design, nature, and function, because at the time they were sold or otherwise distributed by the Defendants they were in a condition (a) not contemplated by reasonable persons among those considered expected users or consumers of the pressure cookers; and (b) that was unreasonably dangerous to the expected user or consumer when used in a reasonably expectable way of handling or consumption.

37. Further, a reasonable person would conclude that the possibility and seriousness of harm outweighs the burden or cost of making the pressure cookers safe. Specifically:

   a. The pressure cookers designed, manufactured, sold, and supplied by Defendants were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

   b. The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

   c. Defendants failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

   d. Defendants failed to warn and place adequate warnings and instructions on the pressure cookers;

   e. Defendants failed to adequately test the pressure cookers; and

    f.    Defendants failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented the Plaintiff's injuries and damages.

38. Plaintiff did not know at the time of her use of the Subject Pressure Cooker, nor at any time prior thereto, of the existence of the defects in the product.

39. Defendants knew or should have known that their pressure cookers created high risk of unreasonable harm to Plaintiff and consumers alike.

40. Despite the fact that Defendants knew or should have known that the pressure cooker's lid could be removed while the units were still pressurized, Defendants continued to market their pressure cookers to the general public (and continues to do so).

41. As a direct, actual, and proximate result of Defendants' collective actions and omissions, Plaintiff suffered debilitating injuries, permanent scarring, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

42. Wherefore, Plaintiff requests a judgment against Defendants for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## SECOND CAUSE OF ACTION
## NEGLIGENCE

43. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

44. The Subject Pressure Cooker was expected to and did reach Plaintiff without undergoing any substantial changes or alterations in its condition.

45. Plaintiff neither misused nor materially altered the Subject Pressure Cooker and, at the time of the incident complained of herein, the Subject Pressure Cooker was in the same or substantially similar condition as it was in at the time of sale.

46. Defendants owed a duty to Plaintiff and other users of their products to exercise due care in the sale and distribution of the pressure cookers at issue in this case.

47. Defendants were negligent, careless, and reckless in the design, manufacture, advertising, warning, marketing, and sale of their pressure cookers in that, among other things, they:

   a. Failed to use due care in designing and manufacturing the pressure cookers to avoid the aforementioned risks to individuals;

   b. Placed an unsafe product into the stream of commerce; and

   c. Were otherwise careless or negligent.

48. Plaintiff did not know at the time of her use of the Subject Pressure Cooker, nor at any time prior thereto, of the existence of the defects in the product.

49. Despite the fact that Defendants knew or should have known that the pressure cooker's lid could be removed while the units were still pressurized, Defendants continued to market their pressure cookers to the general public (and continues to do so).

50. As a direct, actual, and proximate result of Defendants' collective actions and omissions, Plaintiff suffered debilitating injuries, permanent scarring, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

51. Wherefore, Plaintiff requests a judgment against Defendants for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## THIRD CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTIES

52. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

53. Implied in every sale of goods in South Carolina are the implied warranties of merchantability and fitness for a particular purpose. *See* S.C. Code Ann. §§ 36-2-314 and 36-2-315.

54. Defendants are merchants with respect to the goods at issue, including the Subject Pressure Cooker.

55. Defendants were sellers of the Subject Pressure Cooker and, thus, have impliedly warranted that the Subject Pressure Cooker which they sold was fit for its ordinary and foreseeable purposes and for the particular purpose for which it was sold.

56. Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of these warranties.

57. The Subject Pressure Cooker was expected to and did reach Plaintiff without undergoing any substantial changes or alterations in its condition.

58. Plaintiff neither misused nor materially altered the Subject Pressure Cooker and, at the time of the incident complained of herein, the Subject Pressure Cooker was in the same or substantially similar condition as it was in at the time of sale.

59. Plaintiff made ordinary and foreseeable use of the Subject Pressure Cooker and Plaintiff relied upon the implied warranties given by Defendants.

60. Contrary to those implied warranties, Defendants' pressure cookers were not merchantable and fit for their ordinary purpose because they had the propensity to lead to serious personal injuries as described herein in this Complaint.

10

61. Plaintiff used the Subject Pressure Cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

62. Plaintiff did not know at the time of her use of the Subject Pressure Cooker, nor at any time prior thereto, of the existence of the defects in the product.

63. As a direct, actual, and proximate result of Defendants' collective breaches of their warranties, Plaintiff suffered debilitating injuries, permanent scarring, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

64. Wherefore, Plaintiff requests a judgment against Defendants for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## **PRAYER FOR RELIEF**

65. WHEREFORE, Plaintiff prays as follows:

    a. Judgment against Defendants;

    b. For sums as actual and other compensatory damages, including pain and suffering and permanent impairment, in an amount as a jury may determine and in excess of the minimum jurisdictional limit of this Honorable Court;

    c. For the costs of this suit, including attorney's fees; and

    d. For such other and further relief to which she may be entitled, that this Honorable Court deems just and proper.

## **JURY DEMAND**

66. Plaintiff hereby demands a trial by jury pursuant to Rule 23, SCRCP.

Dated: February 9, 2024								Respectfully submitted,

By: *s/Elizabeth Middleton Burke*
Elizabeth Middleton Burke (Fed. I.D. 7466)
Misty Black O'Neal (Fed. I.D. 12262)
**ROGERS PATRICK WESTBROOK & BRICKMAN**
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464
Ph:	(843) 727-6500
Fax:	(843) 216-6509
bburke@rpwb.com
moneal@rpwb.com


*In association with*:

**JOHNSON BECKER, PLLC**

Adam J. Kress, Esq.  (MN #0397289)
*Pro Hac Vice to be filed*
Anna R. Rick, Esq. (MN #0401065)
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800
(612) 436-1801 (f)
 akress@johnsonbecker.com
arick@johnsonbecker.com


*Attorneys for Plaintiff Diamond Heyward*